## W. L. SEYMOUR v. THE PEOPLES BANK.

### (Filed 5 January, 1938.)

**1. Bills and Notes § 2b—**

Where the name of the maker of the instrument is forged, the instrument is neither a bill nor a check, since the statute provides that a forged signature is wholly inoperative, C. S., 3003.

**2. Bills and Notes § 12b—**

Where the name of the maker of a check is forged, the drawee bank cannot be held to have accepted same by holding same for more than twenty-four hours, C. S., 3118, 3119, not being applicable to forged instruments, but the bank has a reasonable time in which to protest the instrument as being a forgery.

**3. Same: Bills and Notes § 10b—Endorser held liable on forged check protested by drawee bank within reasonable time.**

Plaintiff was an accommodation endorser for the payee of the check. The check was deposited in a bank for collection, and upon receipt of the check by the drawee bank on Monday, it advised the purported maker by letter that his checking account was insufficient to pay same and asked him to present his savings account book if he desired the check to be paid from that account. Heavy snows delayed the mail so that the purported maker did not receive the letter until late Wednesday, and did not go to the bank until Thursday, when he declared the check a forgery, and the drawee bank protested same and returned it to the bank of deposit, which charged it to the endorser's account. *Held:* The endorser is not entitled to recover the amount of the check from the drawee bank, since the drawee bank had a reasonable time within which to protest same, and under the circumstances it did protest same within a reasonable time, C. S., 3118, 3119, not being applicable to forged instruments.

APPEAL by defendant from *Parker, J.,* and a jury, at April Term, 1937, of PERSON. Reversed.

This is a civil action brought by plaintiff against the defendant to recover $195.00 and interest at the rate of 6 per cent per annum from 20 February, 1936. The action was commenced in a justice of the peace court and no pleadings were filed. Judgment was rendered in the justice's court for plaintiff, and defendant appealed to the Superior Court.

The testimony of plaintiff, W. L. Seymour, was in part as follows: "I have lived in South Boston, Virginia, for nineteen years. I have had business transactions with Mr. Whitt and consider him a man of a reasonable amount of worth. I have handled funds for him in settling an estate of his uncle—the heirs employed me as agent to sell some property and my negotiations were mostly with Mr. D. E. Whitt. All of my negotiations with him were satisfactory. In the course of my transactions with Mr. Whitt I saw him sign several deeds and con-

tracts and checks making distribution of funds coming into my hands from sale of property. The instrument you hand me as plaintiff's Exhibit 'A' is a check dated 13 February, 1936, drawn on The Peoples Bank of Roxboro, payable to A. B. Coyne, with D. E. Whitt's name at the bottom. On the back it is endorsed by A. B. Coyne and myself. The circumstances under which I endorsed it are: On the morning of 13 February I came down to my office at the usual hour and stepped out a few minutes; when I came back a young man who appeared to be 24 or 25 years old, nice appearance, was sitting over by the radiator; the weather was right cold, and he got up and introduced himself to me and told me his name was A. B. Coyne and said, 'I've been over in North Carolina visiting Mr. D. E. Whitt; Mr. Whitt's son and myself are in school together and are good friends and Mr. Whitt is also a friend of mine, and when I came up here the weather has gotten so bad that the roads have gotten almost impassable (that was about the time of the heavy snows), and I just couldn't get my automobile away from there and so I sold it to Mr. Whitt and he gave me this check for $195.00 and told me to come to your office, that he knew you knew him.' I told him I did know Mr. Whitt, and he wanted me to endorse the check he showed me or to cash it for him, he said he was on his way back to Richmond; he said he walked and got out to Virginia, but he couldn't get to Roxboro on account of the bad roads, and I looked at the check, and having seen Mr. Whitt's signature and seeing that it looked perfectly all right, I, without any hesitation, told him that Mr. Whitt's check was good and I didn't hesitate to honor his check for any reasonable amount; in fact, I had some money on hand at that time belonging to them. In the course of my conversation with the young man he discussed some of the business transactions I had had with Mr. Whitt and was thoroughly acquainted with practically every transaction I had had with Mr. Whitt during the entire time. I thoroughly satisfied myself with the genuineness of the writing and endorsed the check for the young man and he took it to the bank I do business with in South Boston. This happened on 13 February, 1936. The next time I heard from the check or thought about it was Monday, 24 February, 1936. The assistant cashier of the bank at South Boston called me in the bank and said, 'Seymour, I have some grief for you. I came down to the bank Saturday, 22 February—the bank was closed that day—and opened the mail and found this check you endorsed in the mail returned to us through the Federal Reserve Bank.' The check had been protested on 20 February, 1936, and returned to my bank. *My bank charged it to my account because I was an endorser, and my account paid it.* I have not been able to locate Mr. Coyne since then and have not collected any part of the check from Mr. Coyne or any other person."

Plaintiff introduced, as his Exhibit "A," the check, in words and figures as follows:

"Roxboro, N. C., 13 February, 1936.

THE PEOPLES BANK—66-232

Pay to the order of A. B. Coyne............ .............. ...................$195.00

One hundred and ninety-five and no/100 dollars for used car.

(S)   D. E. WHITT."

Stamped across the face as follows: "Forgery.   Protested for non-payment.   J. B. Riggsbee, N. P.   2-20-1936."

Endorsed across the back as follows: "A. B. Coyne, W. L. Seymour."

Other endorsements of banks in rubber stamp showing check sent by South Boston bank to Federal Reserve in Richmond, Va., and by Federal Reserve to The Peoples Bank at Roxboro, N. C.

D. E. Whitt testified, in part: "I live in Holloway's Township and am acquainted with Mr. Seymour.   I have had business transactions with him.   I am a customer of The Peoples Bank of Roxboro, North Carolina.   I received the letter you hand me marked plaintiff's Exhibit 'B.'   The letter is written on the stationery of The Peoples Bank of Roxboro, North Carolina, and is addressed to me.   It is signed at the bottom by D. S. Brooks.   The date of the letter is 17 February, 1936. I don't know just what date I received it.   We didn't get any mail on the 18th and 19th, I think it was.   I received it on Wednesday of that week, about 4 or 5 o'clock, late in the afternoon.   I knew that the bank was closed and I didn't come until the next morning.   *I went to the bank the next morning and it was not my check and I didn't know anything about it at all, and I asked Mr. Brooks to let me see it and they did.*"

Plaintiff introduced as plaintiff's Exhibit "B" the letter, in words and figures as follows:

"THE PEOPLES BANK

"Roxboro, N. C., 17 February, 1936.

"MR. D. E. WHITT,
Virgilina, Virginia.

"DEAR SIR:—Your checking account will not pay the check of $195.00 presented today, and no doubt you would like for this to be paid from your savings account.   If this is correct please present your book tomorrow that we may make entry on same.

D. S. BROOKS, *Cashier.*"

On cross-examination D. E. Whitt testified: "The roads at that time were in awful condition and had been during the week preceding. Along about 13 February the roads were so awful it was practically impossible

to get along. I get my mail from R. F. D., Virgilina, Route 4. The letter I received was dated 17 February and I received it on Wednesday. In due course I would have gotten the letter some time Tuesday, but I didn't get it until late Wednesday afternoon on account of the bad roads. It snowed and rained and it was so bad the mail man couldn't get around, and we didn't get any mail on Monday and Tuesday of this week. After I got the letter from Mr. Brooks I went immediately, the next morning, to the bank. I knew the bank was closed that afternoon and it was needless for me to go until the next morning. *When the check was presented to me I pronounced it a forgery. I just knew somebody had forged the check, and for that reason I refused to pay it. It is not my signature on that check."*

At the close of plaintiff's evidence the defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The motion was denied, and defendant excepted and assigned error. The defendant offered no evidence, and the trial judge submitted one issue to the jury. The issue submitted to the jury and their answer thereto was as follows: "In what amount, if any, is the defendant indebted to the plaintiff? Ans.: '$195.00 and interest thereon at the rate of 6 per cent from 20 February, 1936, until paid.' "

The court below gave the following charge: "Gentlemen of the jury, if you find the facts to be as all the evidence in this case tends to show and by its greater weight, the court instructs you to answer the issue, 'In what amount, if any, is the defendant indebted to the plaintiff?' $195.00 with interest. You may retire and make up your verdict."

In apt time the defendant, through its counsel, requested the court to instruct the jury as follows: "That forgery of the signature of the original drawer of the check and that the check is a forgery, being admitted by the plaintiff, that secs. 3118 and 3119 of the Consolidated Statutes of North Carolina do not apply, and that under the circumstances the defendant was not bound to voluntarily return the forged paper within twenty-four hours, and that the rule of reasonable time under the circumstances applies." The request for said instruction was refused by the court and the defendant excepted. The court below rendered judgment on the verdict. The defendant assigned errors to the foregoing exceptions and appealed to the Supreme Court.

*F. C. Owen for plaintiff.*
*York & Boyd and W. D. Merritt for defendant.*

CLARKSON, J. The question involved: Is the plaintiff, who has paid the cashing bank the amount of a forged check, which the plaintiff endorsed for the accommodation of a transient stranger, without knowl-

edge of the forgery, and without requiring identification of the stranger or getting his address, entitled to recover the amount of the check from the drawee bank to which it was sent through usual banking channels for payment because the drawee bank held said check for more than twenty-four hours in order to communicate with the alleged drawer who had a savings account, but not a checking account, with sufficient balance to pay the check, when the drawee bank acted in good faith and returned the check unpaid immediately after discovering the forgery, and within three days from the receipt of said check? On the record we do not think plaintiff is entitled to recover.

We cite the following negotiable instrument laws as bearing on this controversy:

N. C. Code, 1935 (Michie), sec. 3003. "Effect of forged signature. When a signature is forged or made without the authority of the person whose signature it purports to be it is wholly inoperative, and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof against any party thereto can be acquired through or under such signature unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

Sec. 3043. "Liability of acceptor. The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits (1) existence of the drawer, the genuineness of his signature and his capacity and authority to draw the instrument, and (2) the existence of the payee and his then capacity to endorse."

Sec. 3114. "Acceptance defined; how made. The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Sec. 3118. "Time allowed drawee to accept. The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill, but the acceptance, if given, dates as of the day of presentation."

Sec. 3119. "Liability of drawee retaining or destroying bill. Where a drawee to whom a bill is delivered for acceptance destroys the same or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

Sec. 3167. "Check defined. A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided the provisions of this chapter that are applicable to a bill of exchange payable on demand apply to a check."

Sec. 3169. "Effect of certification of check. Where a check is certified by the bank on which it is drawn the certification is equivalent to an acceptance."

Sec. 3170. "Effect where holder of check procures it to be certified. Where the holder of a check procures it to be accepted or certified the drawer and all endorsers are discharged from liability thereon."

On this record there is no dispute that the written instrument, purporting to be a check endorsed by plaintiff for the accommodation of A. B. Coyne, was a forgery.

A forged paper is neither a bill nor a check, and secs. 3118 and 3119, *supra,* do not apply. Sec. 3003, *supra,* provides that "when a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative." The written instrument, under the statute, is "wholly inoperative," and secs. 3118 and 3119 do not apply.

The twenty-four hour limit does not apply, but the rule of reasonable time, under all the facts and circumstances, would apply. We think the time was reasonable and there was no negligence shown to hold defendant bank liable. The forged instrument was received on Monday, 17 February, 1936, by defendant bank, and protested on Thursday, 20 February, 1936.

The able brief of plaintiff cites authorities which we do not think are applicable. We think the statute, sec. 3003, *supra,* controls this action. We do not think the defendant bank by its conduct accepted the instrument in question. As far as we have examined the authorities, the matter in controversy has not been decided heretofore by this Court. No direct authorities have been cited in the learned briefs of the litigants. We think the construction which we put on the statutes is the logic of the situation.

In *Keel v. Wynne,* 210 N. C., 427 (429), we said: "The plaintiff Keel endorsed the check 'O.K.,' viz: 'Correct, all right,' without inquiry. We think that a reasonably prudent man, under the circumstances, should not have done so, and he must bear the loss. Under the facts and circumstances of this case, if plaintiff ever had any rights against defendant Wynne, the clerk, he is estopped to complain by his own negligence. *Tolman v. Am. Nat. Bk.,* 22 R. I., 462; N. C. Code, 1935 (Michie), sec. 3003."

For the reasons given the judgment of the court below is

Reversed.